Brent Dorian Brehm, SBN: 248983
 E-mail: brent@dorianlaw.com
DORIAN LAW P.C.
4500 Park Granada Blvd, Suite 202
Calabasas, CA 91302
Telephone: (747) 297-7409

Attorney for Plaintiff,
Coretta Perry

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Coretta Perry,<br><br>           Plaintiff,<br><br>     vs.<br><br>Metropolitan Life Insurance Company,<br><br>           Defendant. | CASE NO:<br><br>COMPLAINT FOR:<br><br>BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS |

Coretta Perry ("Plaintiff") herein sets forth the allegations of their Complaint against Metropolitan Life Insurance Company ("Defendant" or "MetLife").

1

## PRELIMINARY ALLEGATIONS

1. "Jurisdiction" – This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under an employee benefit plan. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and postjudgment interest, reinstatement to the benefit plans at issue herein, and attorneys' fees and costs.

2. Plaintiff was at all times relevant a resident of the City of Los Angeles.

3. Plaintiff is informed and believes that Defendant Metropolitan Life Insurance Company, is a corporation authorized to transact and transacting business in the Central District of California and can be found in the Central District of California. Defendant is the insurer of benefits under the long term disability plan established by Plaintiff's employer, Salesforce, (hereinafter "LTD Plan"). MetLife acted in the capacity of a plan administrator. MetLife administered the claim with a conflict of interest creating bias that affected the claims determination.

4. Plaintiff is informed and believes that the LTD Plan is an employee welfare benefit plan regulated by ERISA, under which Plaintiff is and was a participant, and pursuant to which Plaintiff is

2

entitled to Long Term Disability ("LTD") benefits. Pursuant to the terms and conditions of the LTD Plan, Plaintiff is entitled to LTD benefits for the duration of Plaintiff's disability, for so long as Plaintiff remains disabled as required under the terms of the LTD Plan. The LTD Plan is doing business in this judicial district, in that it covers employees residing in this judicial district.

5. The LTD Plan does not have a valid grant of discretionary authority to MetLife such that the judicial standard of review is anything other than the default de novo standard of review.

6. MetLife can be found in this judicial district and the LTD Plan is administered in this judicial district. The LTD claim at issue herein was also specifically administered in this judicial district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

## FIRST CLAIM FOR RELIEF AGAINST METROPOLITAN LIFE INSURANCE COMPANY FOR PLAN BENEFITS, ENFORCEMENT AND CLARIFICATION OF RIGHTS, PREJUDGMENT AND POSTJUDGMENT INTEREST, AND ATTORNEYS' FEES AND COSTS (29 U.S.C. § 1132(a)(1)(B))

7. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

8. Prior to her claim for LTD benefits under the LTD Plan, Plaintiff was an Account Executive at Salesforce. Her pre-disability earnings at Salesforce were $275,400.16 annually.

9. Plaintiff's occupation required her to meet with clients and potential clients (including C-suite), sell and upsell contracts, and manage prior accounts she had sold. Travel, presentations, and

uncovering business initiatives and pain points to map back Salesforce's solutions across multiple lines of business was also required.

10. At all times relevant, Plaintiff was a covered participant under the terms and conditions of the LTD Plan. While covered under the LTD Plan, Plaintiff suffered a disability rendering Plaintiff disabled as defined under the terms of the LTD Plan. As a result, Plaintiff became entitled to benefits under the terms and conditions of the LTD Plan. Her date of disability was September 21, 2023.

11. Plaintiff made a claim for disability benefits under Salesforce's Voluntary Disability Insurance ("VDI") plan. The VDI plan provides short-term wage replacement benefits to employees if they cannot work due to an injury, illness, or other qualifying medical condition. Matrix administers the VDI Plan.

12. Matrix is not affiliated with MetLife.

13. Matrix reviewed Plaintiff's claim for disability benefits and determined she was disabled from her date of disability through September 25, 2024 (the maximum benefit date under the VDI Plan).

14. Pursuant to the terms of the LTD Plan, Plaintiff made a claim to MetLife for LTD benefits under the LTD Plan. MetLife assigned Plaintiff claim number 612401248101.

15. After an 180 day Elimination Period, the LTD Plan provides long-term wage replacement benefits to employees if they are Totally Disabled.

16. During the Elimination Period and the next 24 months, the LTD Plan's definition of Total Disability is:

> During the Elimination Period and the next 24 months,
> You are unable to perform with reasonable continuity
> the Substantial and Material Acts necessary to pursue

4

1  Your Usual Occupation in the usual and customary
2  way.
3      17.    During the Elimination Period, Plaintiff's medical condition
4  caused her to experience apprehension, distractibility, inability to relax,
5  irritability, poor concentration, fearfulness, sleep disturbances,
6  diminished ability to think, and lack of decisiveness. These symptoms
7  were disabling and documented by Plaintiff's medical treatment
8  providers in treatment notes spanning the entire Elimination Period.
9      18.    After the Elimination Period, Plaintiff's medical condition
10 caused her to experience apprehension, distractibility, inability to relax,
11 irritability, poor concentration, fearfulness, sleep disturbances,
12 diminished ability to think, and lack of decisiveness. These symptoms
13 were disabling and documented by Plaintiff's medical treatment
14 providers in treatment notes through MetLife's initial claim
15 determination.
16     19.    Plaintiff's medical treatment providers certified her inability
17 to work and listed objective findings that supported this finding and
18 symptoms that they observed which, in their opinion, prevented Plaintiff
19 from working. These certifications happened in writing on May 21, 2024,
20 June 27, 2024, and August 1, 2024.
21     20.    To assist in the evaluation of Plaintiff's claim for benefits,
22 MetLife utilized its contracted insurance medical evaluation ("IME")
23 company, Genex, to review Plaintiff's records. The initial file review
24 report was dated July 23, 2024, and signed by Elbert Greer Richardson,
25 MD, ABPN Board Certification Psychiatry, American Board of Addition
26 Medicine, Medical License Number CT 037889.
27     21.    The relationship between MetLife and Genex is so symbiotic
28 that MetLife initiates file reviews by completing a largely boilerplate

form in its claim management system.

22. Dr. Richardson has a history of assisting insurance companies with the denial of LTD benefits by offering his opinion that the claimant is not occupationally impaired. Examples can be found in multiple reported case decisions. Dr. Richardson performed a paper file review in *LaLonde v. Metropolitan Life Ins. Co.*, Case No. 2:24-cv-01781-DSF-MBK (C.D. Cal. May 7, 2025); *Schmill v. Metropolitan Life Ins. Co.*, Civil Action No. 21-1470 (E.D. La. July 9, 2022); *Lopez v. Life Ins. Co. of N. Am.*, Case No. 20-25259-CIV-ALTONAGA/Torres (S.D. Fla. Sept. 21, 2021); and *Stull v. Life Ins. Co. of N. Am.*, Civil Action No. 3:20-CV-291-DCK (W.D.N.C. Oct. 27, 2021) and in each offered his opinion that the claimant was not totally disabled.

23. Consistent with Dr. Richardson's propensity to offer his opinion that LTD claimants seeking insurance benefits are not occupationally impaired, in his report he stated, "While the claimant's symptoms…are acknowledged, they were not of such severity to impair her occupational functioning."

24. Dr. Richardson signed an addendum to his report dated August 7, 2024. After reviewing additional medical records, all documenting Plaintiff's disability, Dr. Richardson opined, "restrictions and limitations remain not supported."

25. MetLife denied Plaintiff's claim for LTD benefits based on Dr. Richardson's opinion that Plaintiff was not impaired. MetLife's denial, found in a letter dated August 20, 2024, was wrong.

26. Plaintiff timely appealed this determination. MetLife claimed it did not receive Plaintiff's appeal. Plaintiff provided proof of her timely appeal and MetLife accepted her appeal as timely.

27. After MetLife's denial of her claim, Plaintiff's medical

condition caused her to experience fatigability, apprehension, distractibility, inability to relax, irritability, poor concentration, fearfulness, sleep disturbances, diminished ability to think, and lack of decisiveness. These symptoms were disabling and documented by Plaintiff's medical treatment providers in treatment notes through MetLife's subsequent claim determination.

28. During this time, Plaintiff's medical treatment providers certified her inability to work. These certifications happened in writing on November 6, 2024, November 14, 2024, January 30, 2025, March 2, 2025, and June 29, 2025.

29. As a testament to Plaintiff's efforts to treat her disabling medical condition and adhere to the medical judgment of her treatment providers, Plaintiff returned to work on July 14, 2025—the day her doctor released her to work.

30. To assist in the evaluation of Plaintiff's appeal, MetLife utilized its contracted insurance medical evaluation ("IME") company, Emperion, to review Plaintiff's records.

31. Emperion's website states, "Genex IME is now Emperion. Same people. Same service. New name. We know that exams and reviews done right and on time will impact claim outcomes." https://www.emperion.com/ (last accessed on October 21, 2025).

32. The initial file review report was dated May 13, 2025, and signed by Sarah Ghebrendrias, MD, Board Certified Psychiatrist, Medical License A 138908.

33. The website healthgrades identifies Dr. Ghebrendrias as specializing in Child & Adolescent Psychiatry. https://www.healthgrades.com/physician/dr-sarah-ghebrendrias-xylqbbs (last accessed on October 21, 2025). Identifying where, or even if, Dr.

7

1  Ghebrendrias currently practices medicine was not possible with via
2  google searches. Like Dr. Richardson, she issues opinions that assist
3  MetLife's denial of LTD benefits. *Hovan v. Metropolitan Life Ins. Co.*,
4  722 F.Supp.3d 1322, 1329 (S.D. Fla. 2024).

5  34.  Without ever seeing or speaking with Plaintiff, and despite
6  every single treatment record documenting disabling symptoms, Dr.
7  Ghebrendrias opined that, "given consideration to both the self-reported
8  symptoms and clinical observations, the evidence does not…warrant the
9  placement of restrictions or limitations on [Plaintiff's] activities for the
10 period of 9/21/23 forward."

11 35.  Dr. Ghebrendrias "sympathized with" Plaintiff's symptoms,
12 but asserted that "they do not greatly disrupt her daily and occupational
13 functioning from 9/21/23 forward."

14 36.  Plaintiff's file was also reviewed by Hossein Molazadeh, MD,
15 Board certified, Internal Medicine, Medical License C 140126. In his
16 report dated May 19, 2025, Dr. Molazadeh opined that, "given
17 consideration to both the self-reported symptoms and clinical
18 information, the evidence does not…warrant the placement of
19 restrictions or limitations on her activities for any time period from
20 9/21/2023 to present."

21 37.  One of Plaintiff's treatment providers reviewed Drs.
22 Ghebrendrias and Molazadeh's reports. In his June 29, 2025
23 assessment, he noted that Plaintiff "has been a long time patient of mine
24 and recently out of work on medical leave." He also stated, "On review of
25 [Drs. Ghebrendrias and Molazadeh's] findings, there is strong suspicion
26 that at least one of the reports was in part falsified. There are numerous
27 paragraphs where the wording is **exactly the same, consistent with**
28 **large portions of the report being copied and pasted on other**

8

**words, there is strong evidence of plagiarism"**. (emphasis in original).

38. On July 3, 2025, another of Plaintiff's treatment providers explained that since leaving on disability, Plaintiff was engaged in treatment "with the goal of stabilizing her symptoms and developing effective coping strategies. Continued monitoring and support was essential to ensure a safe and sustainable return to work." The provider noted that Plaintiff was released to full duty without restrictions on July 14, 2025.

39. MetLife had Drs. Ghebrendrias and Molazadeh review these findings and additional treatment records. Neither addressed the concern regarding falsification and plagiarism. Both continued to assert Plaintiff had no restrictions or limitations at all since her date of disability.

40. Despite overwhelming evidence of a covered LTD claim, MetLife erroneously and wrongfully continued to uphold its prior determination denying Plaintiff's claim for LTD benefits.

41. MetLife breached the LTD Plan and violated ERISA in the following respects:

    (a) Failing to pay LTD benefit payments to Plaintiff at a time when MetLife knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the LTD Plan. Even though MetLife had such knowledge, MetLife unreasonably denied Plaintiff's LTD benefits;

    (b) Failing to provide a prompt and reasonable explanation of the basis relied on under the terms of the LTD Plan documents, in relation to the applicable facts and LTD Plan provisions, for the denial of Plaintiff's claim for LTD benefits;

9

      (c)    After Plaintiff's claim was denied in whole or in part, MetLife failed to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect Plaintiff's claim along with an explanation of why such material is or was necessary; and

      (d)    Failing to properly and adequately investigate the merits of Plaintiff's disability claim and failing to provide a full and fair review of Plaintiff's claim.

42. Plaintiff is informed and believes and thereon alleges that MetLife wrongfully denied Plaintiff's disability benefits under the LTD Plan by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make MetLife aware of once said acts or omissions are discovered by Plaintiff.

43. Following the denial of benefits under the LTD Plan, Plaintiff exhausted all administrative remedies required under ERISA, and Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the LTD Plan.

44. As a proximate result of the aforementioned wrongful conduct of MetLife, Plaintiff has damages for loss of disability benefits in a total sum to be shown at the time of trial from her date of disability to the date she was released to return to work.

45. As a further direct and proximate result of this improper determination regarding Plaintiff's LTD claim, Plaintiff in pursuing this action has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

46. The wrongful conduct of MetLife has created uncertainty

where none should exist, therefore, Plaintiff is entitled to enforce Plaintiff's rights under the terms of the LTD Plan and to clarify Plaintiff's right to future benefits under the terms of the LTD Plan.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. Payment of disability benefits due Plaintiff from her date of disability to the date she was released to return to work;

2. An order declaring that Plaintiff is entitled to immediate reinstatement to the LTD Plan, with all ancillary benefits to which they are entitled by virtue of their disability under the terms of the LTD Plan;

3. In the alternative to the relief sought in paragraphs 1 and 2, an order remanding Plaintiff's claim to the claims administrator to the extent any new facts or submissions are to be considered;

4. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

5. Payment of prejudgment and postjudgment interest as allowed for under ERISA; and

6. Such other and further relief as this Court deems just and proper.

DATED: October 22, 2025          DORIAN LAW P.C.

                                 By: _____
                                 Brent Dorian Brehm
                                 Attorney for Plaintiff,
                                 Coretta Perry

11